E-FILED
Friday, 27 March, 2009  11:14:23 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DOMINICK GIAMPAOLO,
    Plaintiff,

vs.                                                                                                    06-1186

FRANK SHAW et. al.,
    Defendants.

SUMMARY JUDGEMENT ORDER

    This cause is before the court for consideration of various pending motions including the defendants' motions for summary judgement. [d/e 118, 121].

    The court notes that the plaintiff has filed motions asking to withdraw his claims against Wexford Health Sources, Dr. Ravanam and Nurse Furnald. [d/e 155, 163].   In support of his motion, the plaintiff states that since he has been denied discovery and the appointment of counsel, he is unable to litigate these claims.  The record before the court belies the plaintiff's allegation   The plaintiff has demonstrated through his submissions to the court that he is capable of representing himself.  The plaintiff filed an amended complaint adding claims and defendants [d/e 53] He cites to case authority and is able to argue the application of the law to the facts in his case.  And, he has actively participated in the litigation of his case.   The motion to withdraw is therefore denied.   The plaintiff has filed responses to the pending motions for summary judgment which the court will consider.

I.  BACKGROUND

    The plaintiff, a state prisoner, brought his lawsuit pursuant to 42 U.S.C.§1983 claiming that his constitutional rights were violated at the Hill Correctional Center.  The plaintiff has the following claims against 10 defendants:

    a) Defendants Nurse Rita Furnald, Dr. Ravanam, Lois Mathes and Wexford Health Services violated the plaintiff's Eighth Amendment rights when they were deliberately indifferent to the plaintiff's medical condition for approximately three months. Specifically, the plaintiff says he was denied prescription medications and examinations causing him to suffer severe ulcer pain, intestinal pain, migraines and back pain.
    b) Defendants Mark Spencer, Leonard Palmer and Robert Schisler violated the plaintiff's right to meaningful access to the courts by failing to provide him adequate time in the law library and thereby preventing him from filing an appeal.
    c) Defendant Lewis violated the plaintiff's Eighth Amendment rights when he was deliberately indifferent to the plaintiff's health and safety. Specifically, the plaintiff says Lewis failed to provide proper clothing for frigid winter temperatures causing him to

become ill.
d) Defendant Collinson violated the plaintiff's First Amendment rights when he took several books from the plaintiff without any legitimate reason.
e) Defendant Shaw violated the plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment based on the living conditions at Hill Correctional Center. The plaintiff says he suffered physically when he was forced to live in a very small cell with another inmate and not allowed sufficient time outside his cell.

## II. FACTS

The plaintiff was incarcerated at Hill Correctional Center (herein Hill) from late 2004 to late 2006. The plaintiff is now housed at Danville Correctional Center and no longer has contact with the individual defendants.

Defendant Lois Lindorff Mathes says she is a registered nurse. However, she works as an administrator at Hill Correctional Center. Mathes says she does not recall ever providing medical care or treatment to the plaintiff. In addition, Mathes says she cannot make medical diagnosis nor prescribe medications. A request to see a doctor does not come through the Health Care Unit, but goes directly to the scheduling nurse. (Def. Memo, Mathes Aff, p. 1)

Defendant Mathes says when any offender at Hill requests that a prescription be refilled, a doctor is asked to review his medical record. In addition, if an inmate believes he is not being seen or treated in a timely manner, he may send an inmate request form to the Health Care Unit. Mathes says during the plaintiff's stay at Hill, she did not receive any request slips from the plaintiff in relation to scheduling or an alleged denial of prescription medication. (Def. Memo, Mathes Aff, p. 1)

Defendant Reita Furnald is a nurse at Hill and says the plaintiff was one of her patients. Furnald says she cannot prescribe medications to offenders. "Instead, I implement the patient's medical plan in accordance with the physician's instructions." (Def. Memo, Furnald Aff. p. 2) Furnald says when the plaintiff arrived at the correctional center, his only medications were "Zantac (generally used to treat ulcers), MVI (multivitamin), and Bentyl(generally used to treat irritable bowel syndrome)." (Def. Memo, Furnald Aff. p. 1) After his arrival, the plaintiff was also prescribed Tagamet (generally used to treat ulcers).

On January 30, 2005, a doctor prescribed Tylenol for the plaintiff and he was told to return to the Health Care Unit as needed. Doctors saw and evaluated the plaintiff again on four occasions from February 6, 2005 to April 19, 2005.

Nurse Furnald says she also works the medication line at night which is used to hand out previously prescribed medications. Furnald says inmate who need to be evaluated for non-emergency conditions are instructed to submit a sick call request. Occasionally, Furnald says patients with acute non-emergency symptoms, who have not previously been evaluated at sick call, have been provided with non-prescription Tylenol or Advil for temporary relief until they

can be seen at sick call.    Those in need of immediate care are taken to urgent care. (Def. Memo, Furnald Aff. p. 3) Furnald adds that if the nurses on the evening medication line also attempted to conduct sick call, patients would not receive their prescribed medications at the appropriate time.  Therefore, disrupting the medication line could impact the health of other patients.  If a patient like the plaintiff wanted to be re-evaluated for a chronic condition, he would be instructed to put in a sick call request so he could be properly evaluated during the nurse sick call.

Nurse Furnald says on April 22, 2005, she noted in the medical records that the plaintiff's information was to be provided to a doctor for his review of the plaintiff's request for prescription refills.   The plaintiff was seen the following day by a nurse for complaints of pain to his right leg.  He was instructed to return to the Health Care Unit as needed. (Def. Memo, Furnald Aff. p. 4)

On April 28, 2005, the plaintiff requested to be moved to cells where there was more smoking instead of his non-smoking location.  He was also seen by mental health staff for an anxiety disorder.  On May 2, 2005, the plaintiff's prescription for Bentyl was returned unused. The medical records indicate the plaintiff was scheduled to be seen by a doctor on May 11, 2005, but apparently he refused. (Def. Memo, Furnald Aff. p. 4)   The doctor noted that the plaintiff needed to come to sick call if he thought he needed an inhaler.  The plaintiff was seen by mental health staff on this day.

The plaintiff was seen by medical staff on May 15, 2005; May 17, 2005 and May 26, 2005.  On June 10, 2005, Nurse Furnald made another notation that the plaintiff was requesting a refill of Tylenol for neck and back pain as well as his multivitamin.  The plaintiff was seen in the Health Care Unit on June 24, 2005 and was scheduled for a doctor's visit.  However, on July 11, 2005, the plaintiff was taken to Stateville Correctional Center on a court writ and was not able to make the appointment.  The plaintiff remained at Stateville until July 26, 2005. (Def. Memo, Furnald Aff. p. 5)

On August 5, 2005 the plaintiff was evaluated by mental health staff and a note was made for him to follow up with a medical doctor.  On August 6, 2005, Nurse Furnald indicated that the plaintiff was requesting refills of Tagmat and Bentyl and was requesting a lower bunk permit.(Def. Memo, Furnald Aff. p. 6)  Nurse Furnald says "[a]t no time was (the plaintiff) at risk of serious harm, because he had only to submit a sick call request in order to be properly evaluated and treated in the healthcare unit." (Def. Memo, Furnald Aff. p. 6)

Dr. Srinivas Ravanam says the plaintiff was one of his patients when the plaintiff was incarcerated at Hill.  On August 6, 2005, a nurse wrote in the medical records that the plaintiff was requesting that two prescriptions for Tagamet and Bentyl be refilled.  The nurse also noted that the plaintiff had spina bifida and has requested a low bunk permit renewal.  Dr. Ravanam says he reviewed the file on August 8, 2005 and scheduled the plaintiff for a doctor's appointment. (Def.Memo, Dr. Ravanam Aff, p. 1-2).

3

Dr. Ravanam says there were potential side effects with the medications and he wanted to evaluate the plaintiff before renewing the prescriptions. "There was, in my opinion as a medical doctor, no serious risk of harm to (the plaintiff) from waiting until he could be properly evaluated before prescribing him the requested medication." (Def.Memo, Dr. Ravanam Aff, p. 2).

Dr. Ravanam says he personally evaluated the plaintiff on August 24, 2005, and prescribed Tagamet, Tylenol and Bentyl as well as approving the lower bunk permit. Dr. Ravanam says this was his only contact with the plaintiff.

In his deposition, the plaintiff says he is not sure when his prescriptions ran out, but he thinks it was in mid May of 2005. (Plain. Depo, p. 76). The plaintiff says when he told Nurse Furnald that his prescriptions had run out, she told him to put in a sick call request. (Plain Depo, p. 74-75) The plaintiff states that he did not believe he should have to submit a sick call request to renew a prescription, and does not remember whether he ever submitted such a request. (Plain Depo, p. 104-105)

Joe Ebbitt is the Manager or Risk Management at Wexford Health Sources, Inc. Ebbitt says Wexford had a contract to provide healthcare services at Hill Correctional Center from March 1, 2004 to June 30, 2007. However, at the beginning of July 2005, there was a threat of a strike by certain Wexford employees and the State of Illinois announced that it was canceling its contract with Wexford. Ebbitt says as a result, Wexford had no contractual obligation to provide health care services to Hill Correctional Center or any other Illinois prison from July of 2005 through December 16, 2005. (Def. Memo, Ebbitt Aff, p. 1-2)

Defendant Frank Shaw says he served as the Warden at Hill Correctional Center from August 1, 2005 to August 1, 2006. Shaw says offenders in general population were allowed two day room periods each day for a total of 3 hours. In addition, five days of every week they were allowed an additional hour of yard time. Offenders were given approximately 30 minutes out of their cells for each meal for a total of one and a half hours. Therefore, Shaw estimates that the plaintiff would generally receive about 6 hours out of his cell each day if he chose to take advantage of the opportunities afforded to inmates. (Def. Memo, Shaw Aff. ,p. 1) The plaintiff disagrees and states that he estimate he was allowed out of his cell for approximately 2 hours and 15 minutes. (Plain. Resp. P. 6)  However, the plaintiff, in his complaint, stated that all inmates received one and a half hours of day room time and about six hours of yard time. (Comp, p. 6) The plaintiff also does not count the time out of his cell for meals.

Defendant Shaw adds that the amount of time an offender was allowed out of his cell and the frequency of double ceiling was "a function of the availability of staff and building resources." (Def. Memo, Shaw. Aff, p. 1)

Defendant Shaw says he does not recall the plaintiff ever notifying him of any medical problems he was experiencing due to too little time out of his cell or double ceiling. Shaw states that he has assigned the review of inmate grievances to a designee, and it is a designee's

signature on the plaintiff's grievance. (Def. Memo, Shaw Aff.,p. 2)

Defendant Gil Lewis says he is a Correctional Supply Supervisor at Hill. His job duties include supervising the receiving, storing, issuing and delivery of all items at Hill. During the time period that the plaintiff was at Hill, each offender was issued a lined winter coat, a stocking cap, blue pants, blue shirts, leather boots, socks, T-shirts and underclothes. In addition, an offender could purchase gloves, lined jackets, sweatshirts, sweat pants, thermal tops and thermal bottoms in the commissary. (Def. Memo, Lewis Aff, p. 1). The plaintiff disagrees and states that he was not provided a lined winter coat, nor a raincoat. In his deposition, the plaintiff stated that he did not purchase any additional clothing because the money that he had went toward buying extra food in the commissary. (Def. Memo, Plain. Depo, p. 7-8) The plaintiff also agrees that he had a blanket for use in his cell. (Def. Memo, Plain, Depo, p. 6)

Defendant Lewis says the Director of the Department of Corrections and the Administration at Hill determine what clothing will be given to an inmate free of charge and what items will be available for purchase. Lewis says he does not have the authority to make this decision and does not have the authority to give extra clothing to an offender. (Def. Memo, Lewis Aff, p. 1)

Defendant Robert Schisler says he is a Publications Review Officer at Hill and its his job to review publications to determine whether he should recommend that they be accepted or not. Schisler outlines some of the reasons a publication might be rejected including items that contain obscene material, advocates violence or criminal activity or is in some other way a threat to the safety and security of the institution. (Def. Memo, Schisler Aff, p. 1-2)

Schliser says currently some "Dungeons and Dragons" titles are approved for adult offenders, but many are prohibited.

> It is my understanding that several of the Dungeons and Dragons titles have been disapproved for reasons including that they require organizational activity, which could be a security concern, or because of a concern for inciting violence, or because the publications have been suspected of being mis-used by members of Security Threat Groups in a manner that compromises the safety and security of offenders and staff. (Def. Memo, Schilser Aff, p. 2)

Publications that are on the Illinois Department of Corrections disapproved list are considered contraband and must be confiscated. If a publication does not appear on the list but has questionable content, the Publication Review Officer considers the material and makes a recommendation to the Warden for a final decision. "In such a situation, it would be proper procedure for a property officer who is creating an inventory of the offender's property to confiscate the publication so that such a review can be initiated. (Def. Memo, Schilser Aff, p. 2)

Defendant Ronald Collinson is a Correctional Officer at Hill who works as a property officer. Collinson says it is his job to process incoming and outgoing property of offenders and

it is his duty to confiscate all known contraband.  If he comes across a publication, he must first see if it is on the approved or disapproved list.  If it is not on either list, but is questionable, Hill says he must confiscate the item for a proper review. (Def. Memo, Collinson Aff. ,p. 1) Collinson says he has no involvement in the final determination of whether a publication should be allowed.

Defendant Collinson says he inventoried the plaintiff's property on June 12, 2005 in preparation for his transfer.  During the inventory, he found 5 Dungeons and Dragons books that did not appear on the approved list.  The publications were not on the approved list.   Collinson says he "reasonably suspected that these books might be contraband" because he knew several had been disapproved. (Def. Memo, Collinson Aff, p. 1-2)

Collinson say he forwarded the books to the Internal Affairs Contraband Officer for review.  "I later learned that the books were in fact prohibited, however this determination was not made by me." (Def. Memo, Collinson Aff, p. 2).

Melody Ford says she is the Chairperson of the Office of Inmate Issues.  Ford says she has searched the records of the Administrative Review Board (herein ARB) for grievances concerning the issues in this case.  Ford says the plaintiff did submit two grievances, one dated September 28, 2005 and one dated November 2, 2005, complaining about inadequate clothing for the cold.  Neither grievance mentions Defendant Lewis. (Def. Memo, Ford, Aff, p. 3). In addition, the plaintiff did properly appeal a grievance concerning day room time and double ceiling at Hill, but Ford says the grievance did not mention Defendant Shaw.

Ford says the plaintiff did not properly appeal any grievance concerning:

1) The conduct of Defendant Collinson on July 12, 2005.  The submission sent to the ARB was not timely and did not include the required counselor's response. (Def. Memo, Ford, Aff, p. 3)
2) The conduct of Defendant Mathes.   The ARB did receive correspondence from the plaintiff on May 4, 2006 typed on a grievance form, but it did not have a grievance officers response and report as required. (Def. Memo, Ford, Aff, p. 3-4)
3) There were no grievances concerning Matt Spencer, Leonard Palmer or Robert Schisler and the alleged denial of access to the courts or law library time. (Def. Memo, Ford, Aff, p. 4)
4) There were no grievances related to a need for medication in May through August of 2005. The plaintiff "either apparently did not submit such a grievance to the ARB or the grievance that he submitted to the ARB was returned to him because he had not followed the proper procedure prior to submitting it to the ARB." (Def. Mot, Ford Aff, p. 4).

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

A) FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

The defendants argue that the plaintiff failed to exhaust his administrative remedies for his claims. This is an initial requirement that must be considered prior to consideration of the merits of the plaintiff's claims. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The purpose of the exhaustion requirement is to allow prison officials the time and opportunity to respond to complaints internally before an inmate starts litigation. *Smith v Zachary,* 255 F.3d 446, 450-51 (7th Cir. 2001). The Seventh Circuit has taken a strict

compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)

> The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Jones v Bock,* 549 U.S. 199, 218 (2007).

The grievance procedure applicable to the Illinois Department of Corrections is set forth under Title 20 of the Illinois Administrative Code, Sections 504.800-504.850.  Here are the stated requirements as of  May 1, 2003:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of the individual are not know, but the offender must include as much descriptive information about the individual as possible. 20 Ill.Admin.Code §504.810(b).

If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e et seq. ("the PLRA"), does not define "availability" for purposes of the exhaustion requirement.  Nonetheless, it is clear that a plaintiff's claims cannot be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809-10 (7th Cir.2006).

Exhaustion of administrative remedies is an affirmative defense.   Therefore, the burden of demonstrating a plaintiff failed to exhaust his administrative remedies rests with the defendants. *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 1999).  In addition, any factual disputes concerning exhaustion are to be resolved by the court, not a jury. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir.2008).

The defendants say the plaintiff did not file a timely appeal of his grievance concerning Defendant Collinson taking his books on July 12, 2005.  In his complaint, the plaintiff alleged he was given a shake down slip on this day signed by the defendant that indicated five of his books were considered contraband.  In response to the summary judgement motion, the plaintiff has attached a grievance dated September 20, 2005 complaining about the incident.  The grievance was denied since it was not filed within 60 days of the alleged conduct.   The plaintiff argues that

he did not file a grievance until the books were officially declared contraband. However, the claims in the plaintiff's complaint, his own grievance and the July 12, 2005 disciplinary report all demonstrate the plaintiff knew the books were listed as contraband on July 12, 2005.[1] The plaintiff did not follow the proper procedures for filing a grievance on this issue and therefore has not properly exhausted his administrative remedies for this claim.

The defendants also say that while the ARB did receive correspondence from the plaintiff concerning Defendant Mathes, it had not been submitted through the proper channels and therefore the plaintiff did not provide a grievance officer's response and report as required. In response to the motion for summary judgement, the plaintiff points the court to several exhibits. However, again the plaintiff has not presented any evidence that he followed the procedures and properly appealed his grievance to the administrative review board.

The defendants state the ARB received no grievances concerning Matt Spencer, Leonard Palmer or Robert Schisler and the alleged denial of access to the courts or law library time. The court disagrees. The plaintiff has submitted documents demonstrating that he filed a grievance concerning his lack of law library time. (Ex. Q-1) The plaintiff mentions Defendant Leonard Palmer and Defendant Spencer directly responded to the grievance. The plaintiff clearly states he is being denied adequate law library time and cannot litigate his current cases. The grievance was appealed to the administrative review board and denied on March 17, 2006. The plaintiff has properly exhausted his administrative remedies for Defendants Palmer and Spencer.

However, the plaintiff has not exhausted his administrative remedies against Defendant Schisler on this claim. The plaintiff does not name Defendant Schisler in his grievance, nor does he describe him. The plaintiff's grievance also gives no other indication that Defendant Schisler was involved in his allegations. For instance, while the plaintiff does not directly name Defendant Spencer in his grievance, this defendant clearly knew that the plaintiff was complaining about his law library procedures since he responded to the plaintiff's grievance. *See Shaw v Frank,* 2008 Wl 283007 at 10(E.D. Wis. Jan. 31, 2008)( the standard is whether the offender complaint would put an official on notice of the plaintiff's claim)

The defendants also argue that there were no grievances submitted to the ARB concerning a need for medication. The plaintiff has submitted copies of two grievances dealing with this issue. The first is dated August 12, 2005 and the second is dated August 26, 2005. It appears the first was filed as an emergency grievance and denied. The plaintiff did ultimately receive a response to his claims and this grievance was also denied. The Chief Administrative Officer signed off on the grievance on September 16, 2005. It clearly states on the bottom of this grievance form that it must be appealed to the ARB no later than 30 days after the Chief Administrative Officer signs the form. The plaintiff has not provided any evidence that the grievance was timely appealed to the ARB. The court notes that the plaintiff has submitted a

---

[1] The court notes the plaintiff also filed a grievance contesting that his original grievance was timely, but the grievance was denied. (Ex. O-11)

9

letter from the ARB denying a grievance concerning "medical" that was received on November 2, 2005. The grievance was returned since it was not submitted in the proper time frame.

The court notes that even if the plaintiff had exhausted his administrative remedies for this claim, there is no evidence before the court that the plaintiff ever followed the proper procedure to obtain a refill of his prescription. Even in the world outside of the Department of Corrections, it is common practice for a doctor to examine a patient before a agreeing to a refill. In addition, there is no medical evidence before the court that the plaintiff suffered any injury or was in any medical danger in the time period that he went without his prescriptions.

The court finds that the plaintiff failed to exhaust his administrative remedies as required for the following claims:

> 1) Defendants Nurse Rita Furnald, Dr. Ravanam, Lois Mathes and Wexford Health Services failed to provide him prescription medication in violation of his Eighth Amendment rights.
> 2) Defendant Robert Schisler violated the plaintiff's meaningful access to the courts by failing to provide him adequate time in the law library and thereby preventing him from filing an appeal.
> 3) Defendant Collinson violated the plaintiff's First Amendment rights when he took several books from the plaintiff without any legitimate reason.

The court notes that the defendants also argue that although the plaintiff did appeal grievances concerning inadequate clothing, double ceiling and living conditions to the ARB, he did not name Defendant Lewis in his clothing grievance and did not name Defendant Shaw in his grievance concerning living conditions. Nonetheless, the court notes that in his grievances concerning lack of adequate clothing, the plaintiff clearly mentions clothing staff and Defendant Lewis responded to his grievance.

It does not appear that either side has submitted the body of the plaintiff's grievance concerning living conditions. The defendants say Defendant Shaw was not named in the grievance, but the plaintiff may have otherwise identified the defendant. Therefore, the defendants have not met their burden of showing the plaintiff failed to exhaust his administrative remedies as to this claim.

B. DENIAL OF MEANINGFUL ACCESS TO THE COURTS.

The defendants argue that the plaintiff has not demonstrated that Defendants Mark Spencer and Leonard Palmer denied the plaintiff's meaningful access to the courts by failing to provide him adequate time in the law library and thereby preventing him from filing an appeal. Prison officials have an affirmative duty to provide inmates with meaningful, but not unconditional, access to the courts. *Bounds v. Smith,* 430 U.S. 817, 825 (1977). The withholding of legal materials from inmates will not violate the right of access to the courts unless it prejudices a potentially meritorious legal challenge. *See Lewis v. Casey,* 518 U.S. 343,

351 (1996); *Marshall v Knight,* 445 F.3d 965, 968 (7th Cir. 2006). The plaintiff must show "some quantum of detriment caused by the challenged conduct." *Jenkins v Lane,* 977 F.2d 266, 268 (7th Cir. 1992). Simply alleging that the defendants caused a delay in ligation is not enough. "Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation." *Gentry v. Duckworth,* 65 F.3d 555, 559 (7th Cir. 1995).

The defendants argue that the plaintiff has failed to demonstrate that he suffered any detriment in any ligation due to a lack of law library time. In response to the summary judgement motion, the plaintiff states that he

> has not mislead the Defendants in stating that he was unclear which of his post trial remedies was blocked by the Defendants. To his day the Plaintiff still seeks the precise information of the courts and hereby reserves the right to add to or to amend this response to this claim when the courts reply to the letters requesting docket printouts are answered. (Plain Resp. p. 2)

This is not sufficient. At the summary judgement state, the plaintiff must come forward with some evidence of a substantial prejudice to specific litigation. The motion for summary judgement on this claim is granted.

C. DENIAL OF ADEQUATE CLOTHING.

The defendants argue that the plaintiffs have failed to show that the Defendant Lewis subjected him to cruel and unusual punishment in violation of the Eighth Amendment based on a failure to provide adequate clothing. The plaintiff must pass both an objective and a subjective test in order to establish that the conditions of his confinement violated the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivations was "sufficiently serious." *Wilson*, 501 U.S. 298. Only conditions involving the denial of the "minimal civilized measure of life's necessities" rise to the level of a constitutional violation. *Rhodes*, 452 U.S. at 347. The plaintiff must also show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42).

Courts have held that the Eighth Amendment may be violated when prison officials provide inadequate clothing to inmates required to go outside in the winter, *Knop v. Johnson*, 977 F.2d 996, 1012-13 (6th Cir.1992) or when prison officials provide inmates with clothing that is "patently insufficient to protect [them] from the cold in the winter months." *Balla v Idaho St. Bd. of Corrections,* 595 F. Supp. 1558, 1575 (D. Idaho 1984). "The circumstances, nature, and duration of a deprivation ... must be considered in determining whether a constitutional violation has occurred," *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2000).

The defendants argue that the plaintiff was given a winter coat, stocking cap, blue pants, blue shirts, leather boots, socks, t-shirts and underwear when he entered Hill Correctional Center. The plaintiff also had a blanket for use in his cell. The plaintiff denies that he was given a lined winter coat or a raincoat. There is no clear evidence before this court to clarify what kind of coat the plaintiff did receive. However, the plaintiff does admit that he had extra money in his account, but chose to buy food instead of additional winter apparel.

In addition, the defendants state that the plaintiff was not forced to participate in yard time and could have chosen to stay inside and exercise in his cell or in the gym. The plaintiff does not claim that he was denied the opportunity to exercise inside.

The defendants state that the only time the plaintiff would have to go outside was if he went to the gym, law library, health care unit or had some other call pass. The plaintiff agreed in his deposition that no call pass required more than five minutes of travel time. (Def. Memo, Plain Depo, p. 16). However, in response to the summary judgement motion, the plaintiff says inmates were also required to line up before they moved, and this would add another five minutes. The evidence before the court would still indicate that inmates were not forced to remain outside for any extended periods.

The court also notes that while he claims in his response that he suffered from ear aches, hearing loss and asthma attacks due to the inadequate clothing, he has failed to produce any evidence to support those claims.

The plaintiff has simply not come forward with sufficient evidence to demonstrate that Defendant Shaw violated his Eighth Amendment rights. They plaintiff has not provided any specific evidence of the number of times he was outside or the temperature range on these days. He has not provided any medical evidence to support his claim of health issues as a result of the temperatures. He has not provided evidence that he was ever forced to go outside in extreme temperatures for any significant length of time. And, he has not disputed that he had money available to buy additional clothing, but chose not to do so. Finally, there is no evidence that Defendant Lewis had the authority to give the plaintiff extra clothing or that Defendant Lewis had any reason to believe the plaintiff faced any risk to his health based on the clothing he was provided. The motion for summary judgement on this claim is granted.

D. LIVING CONDITIONS

Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). However, prisoners are entitled to "the minimal civilized measure of life's necessities."*Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Again the plaintiff must be able to demonstrate not only that the alleged deprivations were "sufficiently serious," but also that the defendant acted with deliberate indifference.

The court notes that the mere practice of double celling is not *per se* unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981). Instead, the court must look at the "totality of the conditions of confinement" to determine whether the living conditions amount to cruel and unusual treatment. *Smith v. Fairman,* 690 F.2d 122, 125 (7th Cir 1982).

> The double celling at issue in *Rhodes* did not violate the Constitution because it was made necessary by the unanticipated increase in the prison population and did not lead to deprivations of essential food, medical care, or sanitation. Moreover, it did not increase violence among inmates 'or create other conditions intolerable for prison confinement.' *Jackson v. Thurmer*, 2008 WL 110502 at 4 (E.D.Wis.,2008) *quoting Rhodes,* 452 U.S. at 348.

Defendant Shaw says although he is the Warden, he does not control the number of inmates housed at Hill Correctional Center and did not make the decision to double cell inmates. Nonetheless, the defendants argue that the plaintiff was double celled in a cell measuring 55 square feet.   The plaintiff has alleged he remained in this cell from 10 to 21 hours each day. Shaw states the plaintiff would receive approximately 6 hours out of his cell a day consisting of 2 day room periods for a total of 3 hours, one hour of yard time on 5 out of 7 days and approximately 30 minutes for each meal for an additional 1 ½ hours.   The plaintiff has claimed that yard time and day room time often overlapped, but admits that all inmates were allowed 1 ½ hours of day room time every day and 6 hours of yard time per week.

The plaintiff makes a claim that the medical care was also inadequate based on the fact that it took him some length of time to obtain refills on his prescriptions.  However, the plaintiff has presented no evidence that he followed the proper procedure to obtain those refills, nor any medical evidence that his health was in jeopardy during this time frame.  In addition, while the plaintiff states the double-celling and lack of time outside his cell had an impact on his health, he has again present no evidence to support that claim.  The plaintiff has not demonstrated that his living conditions amounted to cruel and unusual punishment. *See Smith,* 690 F.2d at 125.

The court also notes that the plaintiff has presented no evidence that Defendant Shaw was aware of the plaintiff's health concerns or problems, and therefore has presented no evidence that this defendant was deliberately indifferent to his claims.  *See Townsend v. Fuchs,* 522 F.3d 765, 775 (7th Cir. 2008). The defendants' motion for summary judgement on this claim is granted.

V.  ADDITIONAL MOTIONS

The various motions asking to quash, issue or continue subpoenas for potential witnesses in this case are denied as moot. [d/e 150, 152, 156, 162, 165]

**IT IS THEREFORE ORDERED that:**

1) The plaintiff's motion to withdraw his claims against Wexford Health Services, Dr. Ravanam and Dr. Furnald is denied. [d/e 155, 163].

2) The defendants motions for summary judgement are granted pursuant to Fed. R. Civ. P. 56. [d/e 118, 121]. The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order. The parties are to bear their own costs. This case is terminated.

3) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)c. If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

4) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available. If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.

5) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.

6) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

7) The various motions asking to quash, issue or continue subpoenas for potential witnesses in this case are denied as moot. [d/e 150, 152, 156, 162, 165]

Entered this 27th day of March, 2009.


                                    s\Harold A. Baker
              _____
                                HAROLD A. BAKER
                          UNITED STATES DISTRICT JUDGE